**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

CRAWFORD'S AUTO CENTER, INC.
and K & M COLLISION, LLC, on behalf
of themselves and all others similarly
situated,

        Plaintiffs,

v.                                                                        Case No:   6:14-cv-6016-Orl-31TBS

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, STATE FARM
GENERAL INSURANCE COMPANY,
STATE FARM INDEMNITY COMPANY,
STATE FARM GUARANTY
INSURANCE COMPANY, STATE FARM
FIRE AND CASUALTY COMPANY,
STATE FARM COUNTY MUTUAL
INSURANCE COMPANY OF TEXAS,
ALLSTATE CORPORATION,
ALLSTATE INSURANCE COMPANY,
ALLSTATE COUNTY MUTUAL
INSURANCE COMPANY, ALLSTATE
FIRE & CASUALTY INSURANCE
COMPANY, ALLSTATE INDEMNITY
COMPANY, ALLSTATE NEW JERSEY
INSURANCE, ALLSTATE NEW JERSEY
PROPERTY AND CASUALTY
INSURANCE COMPANY, ALLSTATE
PROPERTY & CASUALTY INSURANCE
COMPANY, ENCOMPASS INDEMNITY
COMPANY, ESURANCE INSURANCE
COMPANY, ESURANCE PROPERTY &
CASUALTY INSURANCE COMPANY,
GOVERNMENT EMPLOYEE'S
INSURANCE COMPANY, GEICO
INDEMNITY COMPANY, GEICO
GENERAL INSURANCE COMPANY,
GEICO CASUALTY COMPANY, GEICO
ADVANTAGE INSURANCE COMPANY,
GEICO CHOICE INSURANCE
COMPANY, GEICO SECURE
INSURANCE COMPANY, GEICO

**COUNTY MUTUAL INSURANCE COMPANY, THE PROGRESSIVE CORPORATION, PROGRESSIVE AMERICAN INSURANCE COMPANY, PROGRESSIVE CASUALTY INSURANCE COMPANY, PROGRESSIVE GULF INSURANCE COMPANY, PROGRESSIVE SPECIALTY INSURANCE COMPANY, PROGRESSIVE CLASSIC INSURANCE COMPANY, PROGRESSIVE MICHIGAN INSURANCE COMPANY, PROGRESSIVE MOUNTAIN INSURANCE COMPANY, PROGRESSIVE NORTHERN INSURANCE COMPANY, PROGRESSIVE NORTHWESTERN INSURANCE, PROGRESSIVE PREFERRED INSURANCE COMPANY, PROGRESSIVE SECURITY INSURANCE CO, PROGRESSIVE SOUTHEASTERN INSURANCE COMPANY, PROGRESSIVE WEST INSURANCE COMPANY, PROGRESSIVE ADVANCED INSURANCE COMPANY, PROGRESSIVE CHOICE INSURANCE COMPANY, PROGRESSIVE DIRECT INSURANCE COMPANY, PROGRESSIVE GARDEN STATE INSURANCE, PROGRESSIVE MARATHON INSURANCE COMPANY, PROGRESSIVE PALOVERDE INSURANCE COMPANY, PROGRESSIVE SELECT INSURANCE COMPANY, PROGRESSIVE PREMIER INSURANCE OF IL, PROGRESSIVE UNIVERSAL INSURANCE COMPANY, PROGRESSIVE COUNTY MUTUAL INSURANCE COMPANY, ARTISAN & TRUCKERS CASUALTY COMPANY, UNITED FINANCIAL CASUALTY COMPANY, FARMERS INSURANCE EXCHANGE, TRUCK INSURANCE EXCHANGE, FARMERS INSURANCE COMPANY OF ARIZONA, FARMERS**

**INSURANCE COMPANY OF OREGON, FARMERS INSURANCE COMPANY OF WASHINGTON, FARMERS INSURANCE COMPANY, INC., FARMERS TEXAS COUNTY MUTUAL INSURANCE COMPANY, ILLINOIS FARMERS INSURANCE COMPANY, MID-CENTURY INSURANCE COMPANY, FOREMOST COUNTY MUTUAL INSURANCE COMPANY, FOREMOST INSURANCE COMPANY GRAND RAPIDS, BRISTOL WEST INSURANCE COMPANY, COAST NATIONAL INSURANCE COMPANY, 21ST CENTURY CENTENNIAL INSURANCE COMPANY, 21ST CENTURY INDEMNITY INSURANCE COMPANY, 21ST CENTURY INSURANCE COMPANY, LIBERTY MUTUAL HOLDING COMPANY, INC., LIBERTY MUTUAL GROUP INC., THE FIRST LIBERTY INSURANCE CORPORATION, LIBERTY COUNTY MUTUAL INSURANCE COMPANY, TEXAS, LIBERTY MUTUAL FIRE INSURANCE COMPANY, LIBERTY MUTUAL INSURANCE COMPANY, LM GENERAL INSURANCE COMPANY, PEERLESS INSURANCE COMPANY, SAFECO INSURANCE COMPANY OF AMERICA, SAFECO INSURANCE COMPANY OF ILLINOIS, NATIONWIDE MUTUAL INSURANCE COMPANY, ALLIED PROPERTY & CASUALTY INSURANCE COMPANY, AMCO INSURANCE COMPANY, DEPOSITORS INSURANCE COMPANY, NATIONWIDE INSURANCE COMPANY OF AMERICA, COLONIAL COUNTY MUTUAL INSURANCE COMPANY, NATIONWIDE AFFINITY INSURANCE COMPANY OF AMERICA, NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, NATIONWIDE PROPERTY & CASUALTY INSURANCE COMPANY**

**and NATIONWIDE MUTUAL FIRE INSURANCE COMPANY,**

        **Defendants.**

## ORDER

This matter comes before the Court without a hearing on various motions to dismiss (Doc. 157-159) filed by the Defendants, the response in opposition (Doc. 185) filed by the Plaintiffs, and the replies (Doc. 187-189) filed by the Defendants.

**I.    Background**

The Plaintiffs, Crawford's Auto Center, Inc. ("Crawford's") and K&M Collision, LLC ("K&M") operate automobile collision repair facilities in Pennsylvania and North Carolina, respectively. The Defendants are seventy-odd automobile insurance companies, arranged into seven groups, with principal places of business scattered across the United States.[1] As to each of the seven defendant groups, the Plaintiffs in this putative class action contend that they have "company-wide, systematic and uniform claims management practices" and that the group's members "operate[] as a single, integrated enterprise for claims adjustment and administration purposes". *See, e.g.*, Amended Complaint at 22. Collectively, the seven groups are referred to as the "Defendant Insurers".

---

[1] For brevity's sake, this opinion will identify the seven groups only briefly: Defendant State Farm Mutual Automobile Insurance Company and five affiliated companies are collectively referred to as "Defendant State Farm"; Defendants Allstate Corporation and Allstate Insurance Company, along with nine affiliates, are referred to collectively as "Defendant Allstate"; and the same holds true for Defendant GEICO (Government Employees Insurance Company and seven affiliates), Defendant The Progressive (The Progressive Corporation and 24 affiliates); Defendant Farmers (Farmers Insurance Exchange, Truck Insurance Exchange and 13 affiliates); Defendant Liberty Mutual (Liberty Mutual Holding Co., Inc., Liberty Mutual Group, Inc., and eight affiliates) and Defendant Nationwide (Nationwide Mutual Insurance Company and 14 affiliates).

According to the allegations of the Amended Complaint (Doc. 138), which are accepted in pertinent part as true for purposes of resolving the instant motions, the Defendant Insurers have conspired to "suppress compensation for collision repair work and services" to repair facilities such as those operated by the Plaintiffs. (Amended Complaint at 95). The Plaintiffs also allege that the Defendant Insurers have been assisted in this effort by three companies that produce repair-cost-estimating software – CCC Information Services, Inc. ("CCC"), Mitchell International, Inc. ("Mitchell"), and Audatex North America, Inc. ("Audatex") (henceforth, collectively, the "Information Providers")[2] – and a number of insurance companies (henceforth, the "Conspirator Insurers") in addition to those named as defendants in this case. (Amended Complaint at 7-9). The Plaintiffs assert seven RICO claims and two state law claims – one for unjust enrichment and one for fraud. Each of the RICO claims is asserted against a different Defendant Insurer, while the two state law claims are asserted against all of the Defendant Insurers.

By way of the instant motions, the Defendants seek dismissal of all of the claims.

**II.     Legal Standards**

    **A.     Motions to Dismiss**

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to give the defendant fair notice of what the claim is and the grounds upon which it rests, *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957), *overruled on other grounds*, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A Rule 12(b)(6) motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case.

---

[2] The Information Providers, it is alleged, assist the insurers by lowballing, in their software, the time required to perform various repairs. *Id.* at 36.

*Milbum v. United States*, 734 F.2d 762, 765 (11th Cir.1984). In ruling on a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir.1988). The Court must also limit its consideration to the pleadings and any exhibits attached thereto. Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

The plaintiff must provide enough factual allegations to raise a right to relief above the speculative level, *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1966, and to indicate the presence of the required elements, *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir.2007). Conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal. *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court explained that a complaint need not contain detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id*. at 1949 (internal citations and quotations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the plaintiff is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

### B. RICO

The Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, provides a civil action to recover treble damages for injury "by reason of a violation of" its substantive provisions. 18 U.S.C. § 1964(c). It prohibits, *inter alia*, the conducting of an

enterprise's affairs "through a pattern of racketeering activity."  18 U.S.C. §1962(c).  When a plaintiff's Section 1962(c) claim is based on an alleged pattern of racketeering consisting entirely of the predicate acts of mail and wire fraud, the substantive RICO allegations must comply not only with the plausibility criteria articulated in *Twombly* and *Iqbal* but also with Fed.R.Civ.P. 9(b)'s heightened pleading standard, which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  *American Dental Association v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010).  *See also Ambrosia Coal & Constr. Co. v. Pages Morales,* 482 F.3d 1309, 1316 (11th Cir. 2007) (holding that civil RICO claims, which are "essentially a certain breed of fraud claims, must be pled with an increased level of specificity" under Rule 9(b)).

The United States Court of Appeals for the Eleventh Circuit has held that pursuant to Rule 9(b), a plaintiff must allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud."  *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1380–81 (11th Cir.1997) (applying the requirements to a RICO fraud complaint).  The plaintiff must allege facts with respect to each defendant's participation in the fraud.  *Id.* at 1381.

The RICO Act also prohibits any conspiracy to violate its substantive provisions.  18 U.S.C. §1962(d).

### C. Conflict of Laws

In a case where federal law is at issue, a transferee court is obligated to apply the law of its own circuit rather than that of the circuit where the case was originally filed.  *Murphy v. F.D.I.C.*, 208 F.3d 959, 965-66 (11th Cir. 2000) (citing, *inter alia, In re Korean Air Lines Disaster of*

*September 1, 1983*, 829 F.2d 1171 (D.C.Cir. 1987)). However, in cases transferred pursuant to 28 U.S.C. § 1407, the transferee court must apply the state law, including the choice of law rules, that would have been applied had there been no change of venue. *See, e.g. In re Managed Care Litigation*, 298 F.Supp.2d 1259, 1296-97 (S.D.Fla. 2003) (citing *Van Dusen v. Barrack*, 376 U.S. 612 (1964)).

**III. Analysis**

At the outset, the Court notes that the 157-page Amended Complaint is a prohibited "shotgun pleading," in that each of its counts realleges and reincorporates every preceding paragraph. *See Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1322 (11th Cir. 2015) (detailing different varieties of shotgun pleadings). Count I – a RICO claim against Defendant State Farm – incorporates all 292 paragraphs that precede it, including a number that have no relevance to that Defendant. (Amended Complaint at 126). Count II – a RICO claim against Defendant Allstate – incorporates all 310 paragraphs that come before it, including a number of the initial 292 that have nothing to do with Defendant Allstate, plus all of the RICO allegations against Defendant State Farm that were asserted in Count I (and which obviously have nothing to do with Defendant Allstate). (Amended Complaint at 136). And so on, down the line, with the fraud claim in Count VIII incorporating all of the RICO allegations asserted in the first seven counts (Amended Complaint at 159), and the unjust enrichment claim in Count IX incorporating all of those allegations plus the allegations from the fraud claim (Amended Complaint at 161). Without more, this warrants dismissal. However, this is far from the only serious flaw in the Amended Complaint, which the Court will address in the event the Plaintiffs opt to replead.

### A. Allegations

As noted above, the Amended Complaint tops 150 pages. It should also be noted that the Amended Complaint is likely 100 pages longer than it ought to be. In a nutshell, the allegations are these:

The Defendant Insurers and the Conspirator Insurers, who collectively provide about 70 percent of the automobile insurance in America, have established an "artificial market value for collision repairs, known in the industry as the 'prevailing rate.'" (Amended Complaint at 7). These "prevailing rates" cover all aspects of automobile repairs, from the hourly rate for labor, to the prices for parts, paint, and other materials, as well as the time, scope, and extent of compensable repair procedures. *Id.* According to the Plaintiffs, however, the "so-called prevailing rates … are lower than market rates for repairs would have been, and would be, in a market free of fraud, deception, and artificial restraint." *Id.* at 7-8. The prevailing rates, the Plaintiffs continue, "are fixed rates set by insurers, and incorporated into their respective nationwide direct repair programs,[3] consisting of repair facilities willing, or economically forced, to agree to accept these fixed rates in exchange for referrals of repair work". *Id.* at 8. These rates, the Plaintiffs continue, are "then imposed upon the entire collision repair industry." *Id.* at 31.

> These prevailing rates are then forced upon non-DRP facilities (like Plaintiffs and the classes here), which never entered contracts to accept these rates from Defendant Insurers and Conspirator Insurers.

---

[3] According to the allegations of the Amended Complaint, all of the Defendant Insurers have direct repair programs (henceforth, "DRPs"), which are defined as "collision repair facilities … that agree to abide by certain uniform standards and procedures in the repairs covered by Defendant Insurers." (Amended Complaint at 29). More particularly, the DRPs agree to abide by limits set by the Defendant Insurers as to the time, scope and cost of compensable repairs. *Id.* at 30.

Id. at 37.

And how is this imposition accomplished? By offering to pay the prevailing rate:

> Defendant Insurers and Conspirator Insurers have established a rigged market in which collision repair facilities must sell their repairs to insurers, which cover and pay for between approximately 75% and 90% of all automotive damage repairs annually (and Defendant insurers and Conspirator Insurers account for approximately 70% of that figure), and the collision repair facilities do not have a choice as to whether to participate in the sale of their repair services to insurers. Rather, they face a Hobson's choice: Sell into a rigged market or do not sell at all – and go out of business.

*Id.* at 38-39.

The Plaintiffs allege that each of the Defendant Insurers has formed an association-in-fact RICO enterprise with whichever Information Provider(s) they happen to utilize. *Id.* at 93. In addition, they allege that, as a result of the Defendant Insurers' "fraudulent and extortionate conduct," they have suffered "under-compensation for collision repair work and services on vehicles covered by insurance." *Id.* at 93.

### B. Standing

Defendant GEICO argues that the Plaintiffs have not suffered an injury at their hands and therefore lack Article III standing to sue them. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (holding that "irreducible constitutional minimum of standing" includes, *inter alia*, requirements that plaintiff have suffered an invasion of a legally protected interest and a causal connection between that invasion and the challenged action of the defendant.) Specifically, GEICO argues that it contracts with its insureds (rather than repair shops) to pay for repairs, while it is the insureds that contract with the repair shops (and, presumably, underpay them). (Doc. 189 at 1-2). Thus, any injuries would have been inflicted on the Plaintiffs by GEICO's insureds, not GEICO. However, this argument relies on facts outside the pleadings and is therefore premature.

In addition, the Court cannot say that a defendant in GEICO's position could not, as a matter of law, inflict an injury for purposes of Article III by defrauding or intimidating a service provider into providing its service to a third party more cheaply (with the resulting savings accruing to GEICO's benefit).

### C. RICO Claims

To maintain a civil RICO claim, a plaintiff must plead, *inter alia*, conduct of an enterprise through a pattern of racketeering activity, plus an injury to business or property by reason of the substantive RICO violation. *Williams v. Mohawk Industries, Inc.*, 465 F.3d, 1277, 1282-83 (11th Cir. 2006) (citations omitted). The Defendants complain, among other things, about the lack of specificity as to the workings of the RICO enterprises – their hierarchy, which affiliates took which actions, and so forth. Their complaints are not unfounded. The reader who makes it all the way through the Amended Complaint comes away with detailed knowledge of automobile repair industry minutiae but little information about what any Defendant did that was actually improper. For present purposes, however, the Plaintiffs' failure to properly plead a pattern of racketeering activity overshadows their failure to describe the workings of these alleged enterprises. Thus this opinion will concentrate on the former.

For purposes of the RICO Act, a pattern of racketeering activity requires at least two acts of racketeering, commonly referred to as "predicate acts." *Id.* at 1283. The Plaintiffs assert that the Defendants committed two different types of predicate acts: extortion and fraud. Each will be discussed in turn.

#### Extortion

The Hobbs Act defines "extortion" as "the obtaining of property from another, with his consent, induced by the wrongful use of actual or threatened force, violence, or fear, or under

color of official right." 18 U.S.C. § 1951(b)(2). Fear of economic loss can support an extortion claim under the Hobbs Act. *United States v. Haimowitz*, 725 F.2d 1561, 1572 (11th Cir. 1984).

In this case, the Plaintiffs contend that

> the Defendant Insurers, in violation of 18 U.S.C. § 1951, extorted Plaintiffs and the proposed Classes through wrongful use of fear of economic loss, in that *Plaintiffs and the members of the Classes would not be able to perform the insured repairs unless they accepted the suppressed compensation paid by Defendant Insurers*.

(Doc. 184 at 55) (emphasis added). Taken at face value, this argument is nonsensical. The Plaintiffs are arguing (1) that what they feared losing was not money but the ability to perform repairs on insured vehicles, and (2) that receiving compensation paid by insurance companies was not the benefit they received but rather the burden they shouldered to be able to continue performing repairs on insured vehicles.

In actuality, the Plaintiffs admit throughout the Amended Complaint that they accepted what they believed to be suppressed compensation because if they refused to work that cheaply, some other repair shop would get the work.[4] This is not the sort of fear of economic loss that can support an extortion claim. Under the Hobbs Act, the victim must fear an actual loss, not merely the loss of a potential benefit. *United States v. Tomblin*, 46 F.3d 1369, 1384 (5th Cir. 1995). *See also United States v. Capo*, 817 F.2d 947 (2d Cir. 1987) (finding no extortion where alleged victims made payments to improve chances of being selected for job rather than out of fear of losing opportunity to be considered for job). Similarly, the Plaintiffs assert that that the Defendant Insurers threatened to "steer future repairs away from Plaintiffs and the proposed

---

[4] For example, the Plaintiffs allege that the prevailing rate is accepted by both DRP shops and non-DRP shops (Amended Complaint at 38) and complain about a "Hobson's choice" of having to sell into "rigged market" or not at all (Amended Complaint at 39).

Classes unless they accepted the suppressed compensation paid by Defendant Insurers." (Doc. 184 at 55). Without more, there is nothing wrongful about a buyer threatening to take its business elsewhere unless the seller agrees to the buyer's price. Even reading the Amended Complaint in the light most favorable to the Plaintiffs, this is all that has been alleged here.

Beyond these issues, extortion under the Hobbs Act requires "not only the deprivation but also the acquisition of property." *Scheidler v. National Organization for Women, Inc.*, 537 U.S. 393, 404 (2003) (holding that Hobbs Act did not apply where anti-abortion activists shut down abortion clinics, thereby depriving others of property rights, but did not themselves obtain property). The Defendants argue that they did not obtain any property from the Plaintiffs and therefore there was no extortion. The Plaintiffs argue that services can be considered property for purposes of the Hobbs Act. However, the only case they cite for this proposition involves a claim under the federal mail fraud statute, 18 U.S.C. § 1341, rather than the Hobbs Act. *See In re Managed Care Litigation*, 298 F.Supp.2d 1259, 1279-80 (S.D.Fla. 2003) (discussing property interests in relation to the mail fraud statute and pointing out in footnote that plaintiffs have dropped their extortion claims).

Finally, even without these failures to satisfy the requirements of the Hobbs Act, the Plaintiffs' own actions make it clear that there is no extortion here. Extortion involves a victim "agreeing" to do something because of a threat – *e.g.*, "Pay me or I'll burn down your business." In the Amended Complaint, however, the Plaintiffs claim that they accepted reduced compensation *for fear that the insurers would stop trying to offer them reduced compensation*. "Give me a discount or I'll leave you alone" is not extortion.

Fraud

The Plaintiffs' second effort to show that the Defendants participated in an illegal enterprise through a pattern of racketeering fares no better than their first. Under the federal fraud statute, 18 U.S.C. §1841, mail or wire fraud occurs when a person

> (1) intentionally participates in a scheme or artifice to defraud another of money or property and (2) uses or causes the use of the mails or wires in furtherance of that scheme or artifice.

*United States v. Bradley*, 644 F.3d 1213, 1238 (11th Cir. 2011) (internal quotations omitted). In asserting a fraud claim, the Plaintiffs must comply with particularity requirements of Federal Rule of Civil Procedure 9(b), which requires that they allege

> (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1380–81 (11th Cir.1997) (applying the requirements to a RICO fraud complaint). The plaintiff must allege facts with respect to each defendant's participation in the fraud. *Id.* at 1381.

*American Dental Association v. Cigna Corp.*, 605 F.3d 1283, 12901 (11th Cir. 2010). Simply stated, the Plaintiffs here have utterly failed to comply with these requirements. The alleged fraud is described in only the most general terms, with no effort made to identify the allegedly fraudulent statements or the defendants who uttered them.[5] Aside from some particulars about

---

[5] The Plaintiffs point to a list of 59 "representative transactions," attached as exhibits "E" and "F" to the Amended Complaint, as satisfying the particularity requirement. (Doc. 184 at 49). According to the Plaintiffs, the attachments "outline in detail the dates, times and places that the events occurred [and] the dealings that comprise each transaction." (Doc. 184 at 49). Upon review, however, the exhibits are merely spreadsheets listing a series of transactions where the insurers' estimates (and resulting payments) were lower than the Plaintiffs' invoices, along with (apparently) an itemization of the procedures or parts which the insurers had not included in their estimates and for which they did not pay. There is nothing in the spreadsheets that indicates any insurer committed fraud, or even that the insurer was describing its estimate as being based on any sort of "prevailing rate". If anything, the Plaintiffs' itemization of all of the things for which the

- 14 -

how Defendant State Farm conducts its survey of labor rates and contracts with its DRPs – Amended Complaint at 75-84 – the Plaintiffs mostly assert that all of the bad things were done by all of the Defendants (plus their co-conspirators).

Moving beyond the pleading requirements, the Plaintiffs' have failed to satisfy the substantive requirements for pleading a fraud claim. They have not alleged that they were misled as to the amount they would be paid for any repair job – *i.e.*, that they were deceived into believing they would receive, say, $1,000 for their work but only received $800. Rather, they contend that they were misled as to what the "so-called industry prevailing rates" were.[6] But successfully asserting a "scheme or artifice to defraud" requires proof of a material misrepresentation or the omission or concealment of a material fact calculated to deceive another out of money or property. *Bradley* at 1238. "A misrepresentation is material if it has a natural tendency to influence, or is capable of influencing, the decision maker to whom it is addressed." *United States v. Maxwell*, 579 F.3d 1282, 1299 (11th Cir. 2009).

There are no allegations that the Defendant Insurers' description of the amount of their offers as the "prevailing rate" could or did influence the Plaintiffs into doing a $1,000 job for $800. The Plaintiffs have not alleged that they are entitled to receive the prevailing rate or obligated to accept it when offered. Moreover, the Plaintiffs allege that the entities that have established and pay the prevailing rate – the Defendant Insurers and the Conspirator Insurers –

---

insurer refused to pay belies any notion that the insurers were trying to commit fraud via their repair estimates.

[6] More particularly, the Plaintiffs assert in their response to the instant motions that "Defendant Insurers, in collaboration with the Information Providers, are able to fraudulently establish and misrepresent to Plaintiffs and the proposed Classes the so-called industry prevailing rates" for labor; paint and materials reimbursement; parts; and the time, scope, and extent of compensable repairs. Doc. 183 at 47.

collectively make up about 70 percent of the automobile insurance market. Amended Complaint at 7. One would expect to find that the rates paid by (at least) 70 percent of those in the market are, in fact, the prevailing rates.[7] Accepting the allegations of the Amended Complaint in pertinent part as true, it appears that the alleged misrepresentations were not only not material, they were not misrepresentations.

The Plaintiffs argue, correctly, that reliance is not an element of a civil RICO claim based on mail or wire fraud. *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008) (holding that losing bidders at auction could pursue fraud-based RICO claim against winning bidders, where winning bidders had misrepresented their compliance with bidding rules to auctioning authority (only), thereby improperly giving them higher likelihood of winning). Though correct, this argument misses the mark, as Plaintiffs must demonstrate an injury to their property or business by reason of the substantive RICO violation to prevail on their civil RICO claim. *Mohawk Industries*, 465 F.3d at 1282-83. In the absence of any reliance by the Plaintiffs, it is difficult to imagine a way in which the Defendants' alleged misrepresentations as to the actual prevailing rate could have injured the Plaintiffs' property or business.

There are not the only shortcomings (both procedural and substantive) in the Plaintiffs' RICO claims, but they are enough.[8] The RICO claims will be dismissed without prejudice.

---

[7] The Plaintiffs implicitly admit that the "so-called" prevailing rates are truly the rates that prevail in the industry when they allege that "so-called prevailing rates … are lower than market rates for repairs would have been, and would be, in a market free of fraud, deception, and artificial restraint." *Id.* at 7-8.

[8] The Plaintiffs' failure to properly assert substantive RICO claims is also fatal to their RICO conspiracy claims, which do not incorporate any additional allegations. *Rogers v. Nacchio*, 241 Fed.Appx. 602, 609 (11th Cir. 2007) (citing *Jackson v. Bellsouth Telecommunications*, 372 F.3d 1250, 1269 (11th Cir. 2004).

### D. State Law Claims

As noted above, the Plaintiffs reside in Pennsylvania and North Carolina, and the case was filed in Illinois before being transferred to Florida. The parties did not spend a great deal of time analyzing which states' laws should govern the Plaintiffs' fraud and unjust enrichment claims, and the Court will not do so here, especially given that the entire Amended Complaint must be dismissed as a shotgun pleading.[9] However, the Court will address some issues that appear to apply regardless of which state's law is to be applied.

The Plaintiffs' failure to plead with particularity in relation to their RICO claims is also fatal to their state law fraud claim. *See, e.g., Youndt v. First Nat. Bank of Port Allegany*, 868 A.2d 539, 544 (Pa. Super. 2005) (requiring that fraud be pled with particularity) and *Terry v. Terry*, 273 S.E.2d 674, 678 (N.C. 1981) (same). In addition, while reliance is not an element of a federal RICO claim, it is an element of fraud claims under both North Carolina and Pennsylvania law. *See*, *e.g*., *Blumenstock v. Gibson*, 811 A.2d 1029, 1034 (Pa. Super. 2002) (defining elements of fraud as including "justifiable reliance on the misrepresentation") *and Terry*, 273 S.E.2d at 678 (holding that fraud plaintiff must show that defendant's false representation, made with intent to deceive, was successful and resulted in injury).

---

[9] Generally speaking, this court is obligated to apply the choice of law rules that the Illinois court would have applied. *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1960). Under Illinois choice of law rules, the law of the state where the injury occurred should govern, unless Illinois has a more significant relationship with the occurrence and with the parties. *Hardly Able Coal Co. v. International Harvester Co.*, 494 F.Supp. 249, 250 (N.D. Ill. 1980) (citing *Ingersoll v. Klein*, 262 N.E.2d 593, 595 (Ill. 1970)). No party has argued that Illinois has a more significant relationship to these events or these parties than the states where the alleged injuries occurred, and thus it appears that the state law claims herein would be governed by the laws where each Plaintiff resides.

Under Pennsylvania law, the elements of a claim for unjust enrichment are: (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. *Mitchell v. Moore*, 729 A. 2d 1200, 1203 (Pa.Super. 1999). North Carolina law specifies five elements to such a claim: (1) a benefit conferred upon the defendant by the plaintiff; (2) the benefit must not have been conferred officiously, that is, it must not have been conferred by an interference in the affairs of the other party in a manner that is not justified under the circumstances; (3) the benefit must not have been gratuitous; the benefit must be measurable; and (5) the defendant must have consciously accepted the benefit. *Butler v. Butler*, 768 S.E. 2d (N.C.App. 2015) (citing *JPMorgan Chase Bank, N.A. v. Browning*, 750 S.E. 2d 555, 559 (N.C.App. 2013)).

The Defendants argue that the Plaintiffs have not alleged that they conferred any benefit upon the Defendants. The Plaintiffs respond that, by performing repairs for the Defendant Insurers' insureds "for which they were obligated to pay," the "value of the services performed by Plaintiffs *relieved Defendant Insurers of their obligations to their insureds under their policies*." (Doc. 184 at 70) (emphasis added). So far as the Court can discern, the Plaintiffs are arguing that because they repaired vehicles owned by the Defendants' insureds, the Defendants did not have to make payments as required by the insurance policies. If so, this argument runs directly counter to the allegations of the Amended Complaint, which are that the Defendants paid, but too little. If not, the Court cannot tell what the Plaintiffs meant to argue. In either case, the Plaintiffs have not cited to any portion of the Amended Complaint where they raised these assertions.[10]

---

[10] The Plaintiffs also argue that the Defendants' "fraud, duress, and impropriety" permitted them to pay artificially suppressed compensation for repair services. (Doc. 184 at 70). Assuming this to be true *arguendo*, it does not aid the Plaintiffs in stating an unjust enrichment

### IV. Conclusion

In consideration of the foregoing, it is hereby

**ORDERED** that the motions to dismiss (Doc. 157-159) filed by the Defendants are **GRANTED**, and the Amended Complaint is **DISMISSED WITHOUT PREJUDICE**. Should the Plaintiffs wish to file an amended pleading that cures the deficiencies discussed above, they may do so on or before December 15, 2015. And it is further

**ORDERED** that all future motions and responses in this matter are limited to a maximum of 20 pages, absent leave of court.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on November 25, 2015.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party

---

claim, as it would not constitute a benefit conferred on the Defendants by the Plaintiffs.