# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

CRAWFORD'S AUTO CENTER, INC. and K & M Collision, LLC, on behalf of themselves and all others similarly situated;

   Plaintiffs,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al.;

   Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No: 6:14-md-02557-GAP-TBS

RE: Case No. 6:14-CV-06016-GAP-TBS

**GOVERNMENT EMPLOYEES INSURANCE COMPANY, GEICO GENERAL INSURANCE COMPANY, GEICO INDEMNITY COMPANY, GEICO CASUALTY COMPANY, GEICO ADVANTAGE INSURANCE COMPANY, GEICO CHOICE INSURANCE COMPANY, GEICO SECURE INSURANCE COMPANY, AND GEICO COUNTY MUTUAL INSURANCE COMPANY'S MOTION AND SUPPORTING MEMORANDUM TO DISMISS SECOND AMENDED COMPLAINT**

In dismissing Plaintiffs' First Amended Complaint ("FAC"), this Court identified "serious flaw[s]" in Plaintiffs' allegations and provided instructions to Plaintiffs if they chose to amend. *Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, No. 6:14-cv-6016-Orl-31TBS, Order at 8 (M.D. Fla. Nov. 25, 2015) (Doc. 201) ("Order").  Plaintiffs ignored this Court's directives, as their Second Amended Class Action Complaint and Demand for Jury Trial ("SAC") fails to rectify the numerous deficiencies the Court previously found.  Rather than heed the Court's admonition that their 157-page FAC was "likely 100 pages longer than it ought to be," Order at 9, Plaintiffs filed an even longer, 171-page SAC that essentially mirrors their FAC. In fact, all they do is make ***more*** conclusory, vague, generalized allegations that fail to allege specific acts of wrongdoing by the GEICO Defendants[1] or support the causes of action alleged.

Plaintiffs have again failed to satisfy their pleading obligations under *Twombly* and *Iqbal*, and GEICO moves to dismiss the SAC for failure to state a claim pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(6), this time with prejudice.

## MEMORANDUM

### I.   PLAINTIFFS' SAC IS AN IMPERMISSIBLE SHOTGUN PLEADING ALLEGING MULTIPLE CLAIMS AGAINST MULTIPLE DEFENDANTS AND IS REPLETE WITH CONCLUSORY, IMMATERIAL ALLEGATIONS

Despite this Court's warning, Plaintiffs' SAC, like its FAC, is an impermissible shotgun pleading warranting dismissal.  *See* Order at 8; *Peavey v. Black*, 476 F. App'x 697, 699 (11th Cir. 2012); *A&E Auto Body, Inc. v. 21st Century Centennial Ins. Co.,* No. 6:14-cv-310-Orl-31TBS (M.D. Fla. June 11, 2014) (Doc. 110) ("*A&E* Order") (another case in the same MDL). The SAC, like its predecessor: (i) adopts allegations and incorporates by reference paragraphs that "have no relevance to [GEICO]," Order at 8; (ii) is still "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; and (iii) "assert[s]

---

[1]   The GEICO Defendants are Government Employees Insurance Company, GEICO General Insurance Company, GEICO Indemnity Company, GEICO Casualty Company, GEICO Advantage Insurance Company, GEICO Choice Insurance Company, GEICO Secure Insurance Company and GEICO County Mutual Insurance Company (collectively, "GEICO").

multiple claims against multiple defendants" without specifying responsibility.  *See Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1322-23 (11th Cir. 2015).

First, Plaintiffs may claim they fixed the shotgun pleading problems, but deleting a few paragraph references so each count does not adopt *all* preceding allegations of the previous count does not solve the problem.  *See A&E* Order at 1 ("[T]he Complaint is a prohibited 'shotgun pleading,' with each count incorporating irrelevant allegations.").  Count III against GEICO still adopts numerous allegations with no connection or relevance to GEICO.  *See, e.g.*, SAC ¶¶ 16-17, 19-22 (regarding other Defendants' corporations); 52-53, 55, 57-61, 63 (regarding specific repairs by other Defendants); 120-21, 125-26, 132-134 (regarding Mitchell and AudaExplore).

Second, as currently drafted, Plaintiffs' web of vague, unsupported allegations does not put GEICO on notice of its allegedly wrongful conduct.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Carvel v. Godley*, 404 F. App'x 359, 361-62 (11th Cir. 2010) ("[Plaintiff's] second amended complaint is an insufficient 'shotgun' complaint . . . [Plaintiff] asks us to force the district court and the defendant to rummage through page after page of facts and conclusions to make independent determinations regarding what allegations, if any, fit with each claim, if any . . . such a pleading cannot adequately put [Defendant] on notice of her allegedly wrongful conduct"); *Cramer v. Florida,* 117 F.3d 1258, 1261 (11th Cir. 1997) (describing plaintiffs' complaint as a "rambling 'shotgun' pleading that is so disorganized and ambiguous that it is almost impossible to discern precisely what it is that these appellants are claiming").  Rather than adequately putting GEICO on notice of its allegedly wrongful conduct, the SAC merely moved around some allegations and made minor, non-substantive edits to others.  *Compare, e.g.*, FAC ¶¶ 2, 3, 6 *with* SAC ¶¶ 3, 4.

Third, Plaintiffs incomprehensibly added new allegations "not obviously connected to any particular cause of action."  *See Weiland*, 792 F.3d at 1322.  Plaintiffs added over 20 new paragraphs alleging that DRP facilities do not perform quality repairs, making no effort to connect these allegations to Plaintiffs' RICO, fraud or unjust enrichment claims against GEICO. *See* SAC ¶¶ 45-66.

Fourth, while conclusorily alleging Insurer-specific enterprises, Plaintiffs make little, if any, distinction among Defendant Insurers, rendering it impossible to disentangle which Defendant Insurer is allegedly responsible for which acts. *See Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (criticizing plaintiff's fifty-eight page "quintessential 'shotgun' pleading for "making no distinction among the fourteen defendants charged. . ."). Plaintiffs' RICO claim against GEICO, SAC ¶ 363, incorporates paragraphs focused on Defendant Insurers other than GEICO. *See, e.g.*, SAC ¶¶ 52-53 (describing a State Farm claim and DRP facility in Maryland); ¶¶ 57-61 (describing Allstate claim); ¶¶ 81-84 (describing State Farm and Mitchell's licensing). Further, Plaintiffs continue to plead fraud and unjust enrichment collectively as to all Defendant Insurers and do not segregate allegations. SAC ¶¶ 463-475.

This Court has given Plaintiffs more than a fair opportunity to cure their pleading deficiencies. In *Peavey*, the defendants' motion to dismiss the plaintiff's complaint was granted after finding the complaint "indecipherable" and in violation of Rule 8(a). 476 F. App'x at 698. The plaintiff's were given a chance to amend, but continued to make many of the same allegations, continuing to violate Rule 8(a). *Id.* The Court did not grant the plaintiff leave to amend a third time and the Eleventh Circuit affirmed. *Id.* at 698-99. This is Plaintiff's "third failure to comply with Rule 8(a)." *See id.* at 699. Just like *Peavey*, Plaintiffs' SAC is "unintelligible, indecipherable, and replete with irrelevant facts, making it impossible for the defendants to know what [Plaintiffs] claim[], against whom, and on what grounds" and is their third attempt to allege the same claims.[2]  It should be dismissed with prejudice. *See id.*

## II.   PLAINTIFFS FAIL TO PLEAD THE NECESSARY ELEMENTS OF THEIR CLAIMS UNDER *TWOMBLY* AND FAIL TO PLEAD RICO AND FRAUD CLAIMS WITH THE REQUIRED PARTICULARITY

Plaintiffs' SAC falls short of the plausibility standard articulated by the Supreme Court in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed me accusation." *Iqbal*, 556 U.S. at 678. To survive a motion to dismiss, plaintiff must allege facts that support the elements of its alleged

---

[2] GEICO notes the Plaintiffs have also had the benefit of the other rulings in this MDL.

causes of action and substantiate the alleged effects and injury.  *See id.* at 678-79.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 678; *see also Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 708-10 (11th Cir. 2014) (applying *Twombly* plausibility standard to RICO claim).

Plaintiffs' SAC does nothing more than offer "labels and conclusions, and a formulaic recitation of the elements of a cause of action."  *See Twombly*, 550 U.S. at 555.  Plaintiffs do not even attempt to connect their factual allegations to the alleged causes of action, instead sprinkling legal buzzwords throughout the SAC in an attempt to state a claim.  *See, e.g.*, SAC ¶¶ 4, 170-82, 257.  At most, the SAC *might* allow the court to infer the *possibility* of misconduct, but Plaintiffs have not alleged facts that, if proven, entitle them to relief.  *Iqbal*, 556 U.S. at 679.

Further, as this Court emphasized in its Order dismissing Plaintiff's FAC, Plaintiffs also must meet the heightened pleading requirements under Rule 9(b) for their fraud allegations under both RICO and state common law.  Order at 6-7, 14-15; Fed. R. Civ. P. 9(b); *see Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007) ("Civil RICO claims. . . are essentially a certain breed of fraud claims [which] must be pled with an increased level of specificity [in compliance with Rule 9(b)].");  *United States ex rel. Keeler v. Eisai, Inc.*, 568 F. App'x 783, 803 (11th Cir. 2014)  ("[T]he heightened pleading standard of Rule 9(b) generally applies to state law fraud claims brought in federal court") (citation omitted).  In the Eleventh Circuit, to satisfy Rule 9(b) for their RICO claims, Plaintiffs must allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud."  *Miccosukee Tribe of Indians of Fla. v. Cypress*, __ F.3d __, No. 14-12115, 2015 WL 9310571, at *7 (11th Cir. Dec. 23, 2015);  Order at 14 (*citing Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997));  *see also United States ex rel. Matheny v. Medco Health Solutions, Inc.*, 671 F.3d 1217, 1222 (11th Cir. 2012) ("The particularity requirement of Rule 9(b) is

satisfied if the complaint alleges 'facts as to time, place, and substance of the defendant's alleged fraud . . ..'") (quoting *Hopper v. Solvay Pharms., Inc.*, 588 F.3d 1318, 1324 (11th Cir. 2009)).

Plaintiffs, however, disregarded this Court's instructions, Order at 14, and allege fraud in only the most general terms, failing to identify any allegedly fraudulent statements and who uttered them. *See, e.g.*, SAC ¶¶ 178-79, 184, 270-71, 285-86. Plaintiffs' broad allegations against all Insurer Defendants fail to meet Rule 9(b)'s particularity requirements. *See* Order 14-15 ("Plaintiffs mostly assert that all of the bad things were done by all of the Defendants."). "[I]n a case involving multiple defendants . . . the complaint should inform each defendant of the nature of his alleged participation in the fraud.'" *Ambrosia*, 482 F.3d at 1317 (quoting *Brooks*, 116 F.3d at 1381) (finding that plaintiff "failed to plead its civil RICO claims against each defendant with the required level of specificity"). "Plaintiffs have taken a broad brush approach in pleading their RICO [and fraud] claims" failing to allege these claims with the requisite specificity. *See Montoya v. PNC Bank, N.A.*, No. 14-20474-CIV, 2014 WL 4248208, at *21 (S.D. Fla. Aug. 27, 2014) ("RICO claims based on fraud . . . require a finer brush as they 'must be pleaded with particularity, in accordance with [Rule 9(b)].'") (quoting *Liquidation Comm'n of Banco Intercont'l, S.A. v. Renta*, 530 F.3d 1339, 1355 (11th Cir. 2008)). Plaintiffs' fraud claims should be dismissed with prejudice.[3]

## III.   PLAINTIFFS RICO CLAIM AGAINST GEICO FAILS (COUNT III)

To sustain its civil RICO claim, Plaintiffs must show that GEICO: (1) conducted or participated; (2) in the conduct of an enterprise; (3) through a pattern of racketeering activity; (4) proximately causing injury to Plaintiffs' property; (5) that had an impact on interstate commerce. *See* 18 U.S.C. § 1962(c); *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282 (11th Cir. 2006); *see also Smith v. Bank of Am. Home Loans*, 968 F. Supp. 2d 1159, 1168 (M.D. Fla. 2013) (explaining that plaintiff must plead the requirements of 18 U.S.C. § 1962(c) and 18 U.S.C. §

---

[3] *See also Miccosukee*, 2015 WL 9310571, at *7 ("pleading requirements do not extend merely to plausibility, they demand plausibility based upon Rule 9(b)'s heightened degree of specificity.").

1964(c)).  Plaintiffs still do not include allegations supporting any of the required elements; their RICO claim against GEICO must be dismissed.  *See Smith*, 968 F. Supp. 2d at 1169.

## A.  Plaintiffs Do Not Properly Identify Or Allege A RICO Enterprise

Plaintiffs premise their RICO claims on the formation and operation of association-in-fact enterprises between Defendant Insurers and Information Providers, but their allegations do not support the existence of an association-in-fact enterprise.  SAC ¶¶ 170, 180.  An association-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct."  *United States v. Turkette*, 452 U.S. 576, 583 (1981).  "[A]n association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."  *Boyle v. United States*, 556 U.S. 938, 946 (2009).  While "[s]uch a group need not have a hierarchical structure or a 'chain of command' . . . the group must function as a continuing unit and remain in existence long enough to pursue a course of conduct . . . ."  *Id.* at 948.

Plaintiffs cannot show the existence of a RICO enterprise as they fail to allege relationships among Defendant Insurers and Information Providers that evidence any structure. They also fail to allege a common purpose.  "[M]erely alleging that the 'Defendants conspired with each other and with others . . . .' does not allege an enterprise either."  *Palm Beach Cnty. Envtl. Coal. v. Florida*, 651 F. Supp. 2d 1328, 1349 (S.D. Fla. 2009).

### i.  Plaintiffs Fail To Detail An Enterprise Structure

As with Plaintiffs' FAC, the SAC suffers from a "lack of specificity as to the workings of the RICO enterprises."  Order at 11.  Plaintiffs' allegations offer no insight into the alleged organizational structure between GEICO and CCC, let alone among and between the Defendant Insurers.  *See Boyle*, 556 U.S. at 945-46.  Nor do the allegations show an enterprise distinct from each of the Defendants themselves.  *See United Food & Commercial Workers Unions & Emp'r Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 853-54 (7th Cir. 2013).

In *Ray v. Spirit Airlines* the plaintiffs alleged that Spirit violated RICO when it advertised lower fares but added additional charges and fees to generate "non-ticket revenue." No. 12-61528, 2015 WL 5168367. *1 (S.D. Fla. July 27, 2015). Plaintiffs failed to file a third amended complaint, the court granted Spirit's motion to dismiss the second amended complaint and entered judgment for Spirit and plaintiffs moved for relief from the judgment. *Id.* In analyzing whether the *Spirit* plaintiffs sufficiently alleged a RICO enterprise, the court noted that the goal of civil RICO was to "combat organized crime, not to police routine commercial dealings," and criticized "opportunistic plaintiffs who have sought to impose civil RICO liability on corporations engaged in standard commercial dealings." *Id.* at *5. The court emphasized that to allege a RICO enterprise and sustain a RICO claim, plaintiffs must prove the existence of two distinct entities: (1) a person and (2) an enterprise that is not the same person but by a different name. *Id.* (noting that the Supreme Court in *Boyle* left the distinctiveness requirement undisturbed). The distinctiveness requirement ensures RICO liability only attaches if defendants conducted or participated in the *enterprise's* affairs, not just their own. *Id.*

The *Spirit* Court ultimately concluded that the plaintiffs "d[id] not demonstrate the requisite structural detail or distinctiveness of a RICO enterprise." *Id.* at *6. Indeed, all the court could infer was that the Accenture subsidiary sold Spirit a management solutions platform, failing to "demonstrat[e] a separate and distinct vehicle for racketeering activity." *Id.* at *6-7.

Like in *Spirit*, Plaintiffs have failed to demonstrate a separate and distinct RICO enterprise, merely describing a contractual business relationship instead. Like many business relationships, the SAC alleges GEICO purchases a product from CCC, SAC ¶ 72; GEICO pays significant sums of money for this product annually, SAC ¶ 74; GEICO and CCC sign contracts of a duration of 2-5 years specifying their business relationship, SAC ¶ 75; GEICO and CCC meet to discuss the product specifications, SAC ¶¶ 76, 79; and GEICO requests that CCC refine its products to meet GEICO's cost containment goals, SAC ¶ 77. Without more than generic descriptors of a typical business relationship, Plaintiffs cannot show any sort of enterprise structure that served as "'a vehicle for the commission of two or more predicate crimes.'" *See*

*Sun v. Girardot*, 237 F. App'x 415, 418 (11th Cir. 2007) (quoting *United States v. Goldin Indus., Inc.*, 219 F.3d 1271, 1275 (11th Cir. 2000)).

### ii. Plaintiffs Do Not Allege That GEICO And CCC Had A Common Unlawful Purpose

On this third attempt, Plaintiffs once again do not sufficiently allege that GEICO and CCC had a common "purpose of conducting illegal activity." *See United States v. Hewes*, 729 F.2d 1302, 1311 (11th Cir. 1984) ("Our precedent indicates that a RICO enterprise exists where a group of persons associates, formally or informally, with the purpose of conducting illegal activity."); *Spadaro v. City of Miramar*, 855 F. Supp. 2d 1317, 1348 (S.D. Fla. 2012). Plaintiffs' allegations simply show that GEICO and CCC each had individual goals of profitably running their respective businesses. *See, e.g.*, SAC ¶¶ 2, 3, 45. To further their individual businesses, GEICO and CCC entered into a business relationship to meet their separate business goals, not for conducting illegal activity separate and apart from their individual businesses. SAC ¶¶ 67-68, 71, 74. At times, GEICO allegedly asked CCC to improve its product to provide more accurate estimates, which GEICO allegedly used to control its costs to keep insureds' premiums low. *See* SAC ¶¶ 77-78. And, as the vendor to GEICO, CCC allegedly worked with GEICO to ensure that its products met its customer's expectations. SAC ¶¶ 140-43. The alleged business relationship helped each entity meet its business goals and was not entered into for the economic benefit of a separate standing enterprise.

Even had Plaintiffs crafted some common goal of a separate and distinct enterprise – which they did not – they have not and cannot allege that GEICO and CCC pursued a common goal of conducting *illegal* activity. *See Hewes*, 729 F.2d at 1311. Instead, the allegations show two businesses that have entered "a typical vendee-vendor relationship" to pursue their own lawful profit and cost containment goals. *See D.M. Robinson Chiropractic, S.C. v. Encompass Ins. Co. of Am*, No. 10 C 8159, 2013 WL 1286696, at *11 (N.D. Ill. Mar. 28, 2013) (dismissing complaint because alleged RICO enterprise was merely "a typical vendor-vendee relationship" without the requisite common purpose). This does not support a civil RICO claim.

### iii. Allegations Of Predicate Acts Do Not Support The Existence Of An Enterprise

In the FAC, Plaintiffs' preoccupation with the alleged predicate acts "overshadow[ed] their failure to describe the workings of the[] alleged enterprises."  Order at 11.  The same problem persists in the SAC.  A RICO enterprise exists "separate and apart from the pattern of activity in which it engages" and must be a separate element pled and proved.  *Palm Beach*, 651 F. Supp. 2d at 1349; *In re Managed Care Litig.*, 298 F. Supp. 2d 1259, 1274 (S.D. Fla. 2003). Here, Plaintiffs have not alleged the workings of a separate and distinct RICO enterprise.  They have not adequately alleged relationships evidencing a structure or a common purpose to conduct illegal activity.  Because they have not identified or alleged the existence of a separate RICO enterprise, Plaintiffs' RICO claim should be dismissed with prejudice.

### B. Plaintiffs Have Not Sufficiently Alleged That GEICO And CCC Conducted Or Participated In The Affairs Of An Enterprise

Plaintiffs also did not plead, and cannot show, that GEICO and CCC conducted or participated in an enterprise's affairs.  Vague, conclusory allegations of "conduct or participate" will not survive a motion to dismiss.  *See Heise v. Porcelli*, No. 8:07-cv-1866-T-24MAP, 2008 WL 2439884, at *4 (M.D. Fla. June 13, 2008) ("In order to survive a 12(b)(6) motion, a plaintiff must offer specific factual assertions as to how the defendants participated in the operation or management of the RICO enterprise."); *Montoya*, 2014 WL 4248208 at *20 (plaintiffs' "scant allegations" of whether defendants had any part in directing or controlling the alleged enterprises fatal to a substantive RICO claim at the motion to dismiss stage).  The Supreme Court has emphasized that "conduct or participate" requires an element of direction.  *See Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) ("[W]e understand the word 'conduct' to require some degree of direction and the word 'participate' to require some part in that direction . . ..").  To overcome a motion to dismiss, Plaintiffs must allege specific facts showing both GEICO and CCC had "*some* part in directing the enterprise's affairs," which encompass allegations of operation and management.  *See id.*; *Heise*, 2008 WL 2439884 at *4 (directing plaintiffs to file amended complaint curing deficiencies, including failing to allege that Defendants "engaged in the operation and management of the enterprise").  Instead, Plaintiffs continue to formulaically

accuse all Defendant Insurers of conducting or participating in an enterprise's affairs, without alleging how GEICO did so.  *See* SAC ¶ 192.

Further, to be held liable under civil RICO, each enterprise member must have had more than "tangential involvement in an enterprise." *See Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 399 (7th Cir. 2009).  In *Crichton*, the plaintiffs challenged a business relationship in which the alleged enterprise marketed information on behalf of an insurer.  Besides failing to show the existence of a RICO enterprise, plaintiffs also failed to allege that the defendants "controlled and conducted the enterprise rather than merely its own affairs." *See id*. ("Allegations that a defendant had a business relationship with the putative RICO enterprise or that a defendant performed services for that enterprise do not suffice.").

Like the plaintiffs in *Crichton*, Plaintiffs challenge a routine business relationship and do not properly allege that either GEICO or CCC took some part in directing a *separate* enterprise instead of their own internal affairs.  And even if Plaintiffs could show that GEICO's alleged instructions on product specifications to CCC met the directional requirement, SAC ¶¶ 76, 79, Plaintiffs allege no facts that CCC also participated in that direction.  A claim that begins and ends with a fraud allegedly committed by one party "is insufficient to state a RICO claim based on an association-in-fact enterprise." *Id.* at 400.  Because Plaintiffs fail to specify how GEICO and CCC conducted or participated in the enterprise's affairs (notwithstanding that an enterprise has not been alleged) – let alone specifically that both GEICO and CCC exercised direction in the enterprise's affairs – Plaintiffs' RICO claim should be dismissed with prejudice.

### C. Plaintiffs Have Not Alleged GEICO Participated In Any Pattern Of Racketeering Activity

Although Plaintiffs spend much of the SAC on activity they claim constitutes the alleged predicate acts, Plaintiffs have not properly pled two distinct, related predicate acts, *see Williams*, 465 F.3d at 1283, and they have not pled the requisite elements of wire fraud or extortion.

### i.  *Plaintiffs Fail To Plead Wire Fraud*

Plaintiffs' allegations of wire fraud do not support a predicate act because they fail to meet both the pleading requirements of Rule 9(b) and the substantive wire fraud requirements.

10

*See* Order at 14-15.   Although this Court's Order emphasized that Plaintiffs' FAC did not

comply with the heightened pleading standard for wire fraud, the SAC ignores the Court, failing

to include specific allegations supporting a wire fraud claim.   Specifically, the SAC lacks:

- Precise statements, documents or misrepresentations made;
- Time, place and person responsible for the statement;
- Content and manner in which these statements allegedly misled the Plaintiffs; and
- What the defendants gained by the alleged fraud.

*See* Order at 14 (*citing Am. Dental Assn. v. Cigna Corp.*, 605 F.3d 1283, 12901 (11th Cir.

2010)); *Brooks*, 116 F.3d at 1380-81.   Plaintiffs put forth no effort to identify the allegedly

fraudulent statements, who uttered them, or any of the other elements required to be alleged

against GEICO to sustain a wire fraud claim.   Order at 14; *see, e.g.*, SAC ¶¶ 178-79, 184, 270-

71, 285-86.  The Eleventh Circuit has routinely found that lumping together all Defendants when

alleging fraud is impermissible.   *See, e.g., Ambrosia*, 482 F.3d at 1317; *Brooks*, 116 F.3d at

1381.  With multiple defendants, "'the complaint should inform each defendant of the nature of

his alleged participation in the fraud.'"    *Brooks*, 116 F.3d at 1381 (*quoting Vicom, Inc. v.

Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994)).   Vague statements about all

Defendant Insurers fail to properly notify GEICO of the allegations against which it must defend.

Plaintiffs also have not met the substantive pleading requirements for wire fraud.   To

allege wire fraud, Plaintiffs must allege that a person: (1) intentionally participated in a scheme

to defraud another of money or property; and (2) used the mails or wires in furtherance of that

scheme.   *See Am. Dental Ass'n*, 605 F.3d at 1290.   To sustain their wire fraud claim, Plaintiffs

must show that GEICO "'had a conscious, knowing intent to defraud and that a reasonably

prudent person would have been deceived by [its] misrepresentations.'"   *See Green Leaf Nursery

v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1306 (11th Cir. 2003) (*quoting Pelletier v.

Zweifel*, 921 F.2d 1465, 1503 (11th Cir. 1991)).

Plaintiffs have not alleged that GEICO intended to deceive or defraud.   *See Am. Dental

Ass'n*, 605 F.3d at 1290-91.   Nor did Plaintiffs allege they were misled.   All the Plaintiffs allege

is that the Defendant Insurers directly communicated to repair facilities what they considered the

prevailing rates for repairs to be based on their own experience and use of the estimating

systems.  SAC ¶¶ 66, 93.  Stating the rate that an Insurer will pay for repair work is not fraudulent.  Had GEICO stated that it would pay one rate but actually paid a lower rate, then Plaintiffs might be better positioned to allege intent.  *See* Order at 15.  Instead, Plaintiffs challenge Defendant Insurers' representations of what they consider the prevailing rates and the rates they will pay repair shops.[4]  At the same time, Plaintiffs admit they knew how much the repairs cost based on their own estimates, as evidenced by their spreadsheets attached to the SAC as exhibits.  Plaintiffs were not misled or deceived.

Even if Plaintiffs could show they were misled, that misrepresentation must be ***material***.  "A scheme to defraud requires proof of a *material misrepresentation*, or the omission or concealment of a material fact calculated to deceive another out of money or property."  *United States v. Maxwell*, 579 F.3d 1282, 1299 (11th Cir. 2009) (emphasis added).  "A misrepresentation is material if it has 'a natural tendency to influence, or is capable of influencing, the decision maker to whom it is addressed.'"  *Id.* (quoting *United States v. Hasson*, 333 F.3d 1264, 1271 (11th Cir. 2003)).  Plaintiffs do not allege that Defendants' representations of prevailing rates influenced their repair work or that lower payments caused them to do a different repair job.  Order at 15 ("There are no allegations that the Defendant Insurers' description of the amount of their offers as the 'prevailing rate' could or did influence the Plaintiffs into doing a $1,000 job for $800.").  Nor do they allege that the lower payment affected the customers they would serve.

In *Topping v. Cohen*, this Court emphasized that the plaintiff failed to plausibly allege that he was misled or that any misrepresentations by one of the defendants regarding a defaulted student loan were material to his civil RICO claim.  No. 2:14-cv-146, 2015 WL 2383630, at *11 (M.D. Fla. May 19, 2015).  This Court found the opposite – the plaintiff had alleged that he *knew* the statements by one of the defendants to be false.  *Id.*  Because the plaintiff could not show he

---

[4] Order at 16 ("One would expect to find that the rates paid by (at least) 70 percent of those in the market are, in fact, the prevailing rates.").

was misled by the allegedly fraudulent statements, the court concluded the mail and wire fraud claims were not adequately pled.  *Id.* at *11.

Here, Plaintiffs similarly allege they knew the Defendant Insurers' statements were "false."  SAC ¶¶ 104-05, 283-86, 293-96.  Plaintiffs have failed to properly allege a claim, because "the alleged misrepresentations were not only not material, they were not misrepresentations."  Order. at 16.[5]  Plaintiffs' wire fraud claim cannot constitute one of the requisite predicate acts for its civil RICO claim against GEICO.

### ii.   *Plaintiffs Have Not Alleged a Plausible Extortion Theory*

Plaintiffs have not adequately pled extortion because they continue to pursue a "nonsensical" theory.  Order at 12.  The Hobbs Act, 18 U.S.C. § 1951(b)(2), defines "extortion" to mean "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."  Under Plaintiffs' illogical theory, Defendants allegedly obtained services from the Plaintiffs, and Plaintiffs performed these services because they feared losing the ability to perform repairs on insured vehicles.  According to Plaintiffs, they accepted the Defendant Insurers' rates because they knew other repair shops would otherwise get the work.  *See* Order at 12.  Plaintiffs' extortion claim has no merit because they have not pled that GEICO obtained property, that they feared the loss of an *actual* benefit, or that GEICO wrongfully threatened them.

First, Plaintiffs continue to inadequately allege that GEICO obtained any property from Plaintiffs.  To obtain property, Plaintiffs must show that GEICO pursued or received "'something of value from' [Defendants] that they could exercise, transfer, or sell.'"  *See Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 405 (2003) (quoting *United States v.*

---

[5] Plaintiffs also cannot seek to recover damages from the conduct they challenge extending past the applicable statutes of limitations because of alleged "fraudulent concealment."  SAC ¶¶ 318-21.  Plaintiffs do not allege that GEICO took affirmative acts to prevent them from discovering the alleged violations.  *See Eaton v. Keith*, 154 F. App'x 844, 848 (11th Cir. 2005) ("Fraudulent concealment must consist of affirmative acts or representations which are calculated to, and in fact do, prevent the discovery of the cause of action.") (citation and internal quotation marks omitted).  Thus, Plaintiffs cannot credibly argue that the relevant statutes of limitations have been tolled.

*Nardello*, 393 U.S. 286, 290 (1969).  This Court noted in its Order dismissing Plaintiffs' FAC that Plaintiffs have failed to show how services can be property under the Hobbs Act.  Order at 13.  But even if Plaintiffs could show that services constitute property, GEICO never obtained services from Plaintiffs.  GEICO's insureds received repair services.[6]

Second, Plaintiffs fear of losing a potential future benefit is not enough to support an extortion claim.  Although fear of economic loss is within the type of fear covered by § 1951, *see United States v. Haimowitz*, 725 F.2d 1561, 1572 (11th Cir. 1984), extortion does not include the fear of losing a *potential* benefit.  *See, e.g.*, *United States v. Tomblin*, 46 F.3d 1369, 1385 (5th Cir. 1995) (requisite fear of economic harm for extortion "must be of a[n] [actual] loss").  Here, all Plaintiffs allege is that they feared not receiving the ability to perform repairs on insured vehicles.  This potential benefit does not fall within the covered fear of economic loss.

Third, and finally, there was no "wrongful" threat that caused Plaintiffs to do something they would not do otherwise.  This Circuit has explained that "the Supreme Court [has] interpreted 'wrongful,' within the meaning of the Hobbs Act, to consist of using a wrongful means to achieve a wrongful objective."  *See United States v. Pendergraft*, 297 F.3d 1198, 1205 (11th Cir. 2002).  Here, Plaintiffs try to characterize Defendants' alleged statements that they will take their business elsewhere if Plaintiffs do not want to accept their payment rates as a "wrongful" threat.  SAC ¶ 268.  But "there is nothing wrongful about a buyer threatening to take its business elsewhere unless the seller agrees to the buyers price."  Order at 13; *see Pendergraft*, 297 F.3d at 1206 ("[F]ear of economic loss is 'an animating force of our economic system,' and, therefore, is not inherently wrongful.") (internal citations omitted).  As this Court recognizes, statements of "[g]ive me a discount or I'll leave you alone" are not extortion.  Order at 13.

---

[6] The court in *Scheidler* also found that merely interfering with or depriving someone of property is not sufficient to constitute extortion.  537 U.S. at 405.

### D.  Plaintiffs Fail To Allege Proximate Causation

Plaintiffs cannot recover for their alleged injury if they do not also show a requisite injury to "business or property" that was "***by reason of***" the substantive RICO violation.  *See* 18 U.S.C. § 1964(c) (emphasis added); *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010) ("[T]he plaintiff is required to show that a RICO predicate offense 'not only was a "but for"' cause of his injury, but was the proximate cause as well.'") (quoting *Holmes v. Secs. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)).  The Eleventh Circuit has explained the "by reason of" requirement implicates two concepts: (1) a sufficiently direct injury so that a plaintiff has standing to sue; and (2) proximate cause.  *Corcel Corp. v. Ferguson Enters.,* 551 F. App'x 571, 575 (11th Cir. 2014); *Rock v. BAE Sys.*, 556 F. App'x 869, 872 (11th Cir. 2014).  These two concepts have significant overlap – they ensure that only the appropriately positioned plaintiff may recover for any alleged injury and that the alleged injury is sufficiently linked to the alleged predicate acts.  *See Williams*, 465 F.3d at 1287.

Although "there is no precise proximate cause algorithm," "the directness or continuity between the defendant's conduct and the plaintiff's injury turns on the facts of each case."  *Boca Raton Cmty. Hosp., Inc. v. Tenet Healthcare Corp.*, 502 F. Supp. 2d 1237, 1245 (S.D. Fla. 2007).  In *Simpson*, plaintiffs failed to state a RICO claim against a former employer because they failed to allege that the employer's hiring of illegal workers was the *proximate* cause of their injury.  *Simpson*, 744 F.3d at 708-10.  According to the Eleventh Circuit, the plaintiffs "pled injury at only the highest order of abstraction and with only conclusory assertions."  *Id.* at 709.  The court found that "[t]he multi-step causal chain they posit is not straightforward, and, at least on these pleadings, the relationship between injury and injurious conduct is not direct."  *Id.* at 713.[7]

---

[7] In *Boca Raton*, the court, while relying on the Supreme Court's decision in *Anza v. Ideal Steel Supply Corp*, 547 U.S. 451, 458-60 (2006), emphasized the following considerations should guide a proximate cause analysis: (1) the degree of attenuation between the RICO violation and the asserted injury; (2) difficulty in ascertaining damages caused to plaintiff allegedly by defendant's conduct; and (3) whether a more directly injured party than the plaintiff is better positioned to vindicate the alleged underlying violation of the law.  502 F. Supp. 2d at 1245.

Similarly, Plaintiffs here have only alleged an indirect injury.  They claim they have suffered "under-compensation for collision repair work and services on vehicles covered by insurance," SAC ¶ 175, but they include no allegations to show that GEICO was the substantial cause of their alleged injury.  *See Rock*, 556 F. App'x at 872 ("A wrongful act is a proximate cause of injury 'if it is a substantial factor in the sequence of responsible causation.'") (quoting *Maiz v. Virani*, 253 F.3d 641, 675 (11th Cir. 2001)).  As in *Simpson*, Plaintiffs' alleged injury is too attenuated from the alleged predicate acts and requires the court to follow a "multi-step causal chain [that] . . . is not straightforward."  *See Simpson*, 744 F.3d at 713.  Many other factors may have contributed to Plaintiffs' belief they were under-compensated (insureds' payments, Plaintiffs' labor/parts costs, varying levels of efficiency) and alleged DRP facilities accepted the prevailing rates as compensation for repair work, which calls into doubt whether Plaintiffs were under-compensated at all.  A "'link [that] is too remote'" is insufficient.'" *Anza*, 547 U.S. at 457 (quoting *Holmes*, 503 U.S. at 271).

Further, because the link is too attenuated, determining damages would be complicated and speculative.  *See Simpson*, 744 F.3d at 713 ("The Supreme Court recognized a directness requirement in the civil RICO cause of action in part to avoid the difficulty involved in 'ascertain[ing] the damages caused by some remote action.'").  Plaintiffs were not parties to the underlying insurance contracts under which Defendant Insurers allegedly underpaid, were not the intended beneficiaries of the insurance proceeds, and their alleged injuries indirectly derive from the rights and duties GEICO owed to its insureds.  *Boca Raton*, 502 F. Supp. 2d at 1248.

This Circuit requires courts to "scrutinize proximate causation at the pleading stage." *Williams*, 465 F.3d at 1287.  Here, at most, the GEICO Defendants' "conduct merely played a role in triggering a chain of events that [may have] eventually contributed to [Plaintiffs']" alleged under-compensation.  *See Boca Raton,* 502 F. Supp.2d at 1246.  But because Plaintiffs have failed to show that their alleged injuries are "by reason of" GEICO's alleged violation, Plaintiffs' RICO claims fail.

    **E.**    **Plaintiffs' RICO Conspiracy Claim Fails Because Its 1962(c) Claim Fails, Plaintiffs Fail to Plead With The Requisite Particularity And Plaintiffs Fail To Plead The Necessary Elements**

As before, the Plaintiffs failure to properly plead their RICO claims under § 1962(c) is also fatal to their RICO conspiracy claims. Order at 16 n.8 (*citing Rogers v. Nacchio*, 241 F. App'x 602, 609 (11th Cir. 2007) ("[W]here a plaintiff fails to state a RICO claim and the conspiracy count does not contain additional allegations, the conspiracy claim necessarily fails.")); *see also Montoya*, 2014 WL 4248208 at *21 ("Because Plaintiffs fail to state a substantive RICO claim and their RICO conspiracy count does not contain additional allegations, their RICO conspiracy claim necessarily fails as well."). Because Plaintiffs' SAC does not cure the fatal flaws in the FAC relating to their RICO conspiracy claim, GEICO incorporates its argument in GEICO's Motion to Dismiss the FAC on this issue. Doc. 159, § IV. E. at 20-22. Plaintiffs' RICO conspiracy claim must again be dismissed.

**IV.**    **PLAINTIFFS COMMON LAW FRAUD CLAIM (COUNT VIII) FAILS TO MEET 9(b)'S PARTICULARITY REQUIREMENT AND DOES NOT INCLUDE ALLEGATIONS SUPPORTING THE REQUIRED ELEMENTS**

Plaintiffs' state fraud claims also must be dismissed because Plaintiffs declined to amend their fraud claim to meet the heightened pleading requirements as instructed by this Court. *See Youndt v. First Nat'l. Bank of Port Allegany*, 868 A.2d 539, 544 (Pa. Super. 2005); *Terry v. Terry*, 273 S.E.2d 674, 678 (N.C. 1981). Although Plaintiffs have not alleged under which state law they bring their fraud claim, this Court indicated that Illinois law should govern. Illinois choice of law principles dictate that the appropriate law is the state where the injury occurred. Order at 17, n.9. Because the named Plaintiffs reside in North Carolina and Pennsylvania, those are the appropriate jurisdictions under which to analyze the state claims. *Id.*

In Pennsylvania, to state a fraud claim, Plaintiffs must plead: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. *See Blumenstock v. Gibson*, 811 A.2d 1029, 1034 (Pa. Super. 2002). In North Carolina, a plaintiff must plead: (1) false representation or concealment

of a material fact; (2) reasonably calculated to deceive; (3) made with intent to deceive; (4) which does in fact deceive; (5) resulting in damage to the injured party. *See Terry*, 273 S.E.2d at 677. Plaintiffs here fail to meet the required elements under either State's law, particularly failing to adequately plead materiality, reliance or an intent to deceive.

First, Defendant Insurers' prevailing rates cannot be a *material* fact to the Plaintiffs' repair of insured vehicles. Plaintiffs themselves admit that "[t]here is no uniform industry rate for repairs; nor should there be." SAC ¶ 86. Defendants' representation of the prevailing rates cannot be material to Plaintiffs' repair work if Plaintiffs knew that rates vary and the prevailing rate simply represented what Defendant Insurers were willing to pay. Thus, "the alleged misrepresentations were not only not material, they were not misrepresentations." Order at 16.

Second, it is not plausible that the representations were misleading. Plaintiffs knew how much repairs would cost and calculated their own estimates, which they shared with Defendant Insurers. SAC Exs. K, M. Plaintiffs also do not claim that GEICO's statements about prevailing rates affected their repair jobs. Because Plaintiffs "possesse[d] information sufficient to call the representation into question" and still completed the repairs, Plaintiffs were not misled as to the amount they would be paid for a repair job, Order at 15, and have not alleged any material misrepresentation.

And finally, just as Plaintiffs failed to plead an intent to defraud, Plaintiffs similarly do not allege an intent to deceive for their state fraud claims. *See Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 374 S.E.2d 385, 391 (N.C. 1988) ("Without the element of intent to deceive, the required scienter for *fraud* is not present. The term 'scienter' embraces both knowledge *and* an intent to deceive, manipulate or defraud."); *see also Rohm & Haas Co. v. Cont'l Cas. Co.*, 781 A.2d 1172, 1178 (Pa. 2001) ("[T]here must be a deliberate intent to deceive"). GEICO clearly has no intent to defraud anyone by stating the prevailing rate it will pay where, as alleged, it is the rate 70 percent of the market pays – meaning it *is* the prevailing rate. *See* Order at 15-16. Plaintiffs' state fraud claim suffers from the same deficiencies as it did in Plaintiffs' FAC, and should be dismissed with prejudice.

18

## V.   PLAINTIFFS' UNJUST ENRICHMENT CLAIM (COUNT IX) DOES NOT ALLEGE ANY BENEFIT CONFERRED ON GEICO

Plaintiffs' unjust enrichment claim fails because Plaintiffs cannot allege they conferred a benefit on the GEICO Defendants.  Both North Carolina and Pennsylvania require Plaintiffs to plead that they conferred a benefit on GEICO and GEICO retained the benefit.  In Pennsylvania, an unjust enrichment claim requires: "(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances it would be inequitable for defendant to retain the benefit without payment of value."  *Mitchell v. Moore*, 729 A.2d 1200, 1203-04 (Pa. Super. 1999).  In North Carolina, Plaintiffs must plead: (1) a benefit conferred upon the defendant by the plaintiff; (2) the benefit must not have been conferred officiously, that is, it must not have been conferred by an interference in the affairs of the other party in a manner that is not justified under the circumstances; (3) the benefit must not have been gratuitous; (4) the benefit must be measurable; and (5) the defendant must have consciously accepted the benefit.  *See Butler v. Butler*, 768 S.E.2d (N.C. App. 2015).

Plaintiffs' SAC still includes no allegations demonstrating notice of a benefit they allegedly conferred on GEICO.  Order at 18; *see Mitchell*, 729 A.2d at 1203; *A&E* Doc. 293, January 22, 2015 Order at 9-10.  Nor can they show that GEICO retained some illusive unjust benefit without payment of value.  Plaintiffs repaired vehicles for the benefit of the claimant, not of any insurer.  Plaintiffs knew the repair services required for each job, how much they would be paid and did the work anyway.  Since Plaintiffs fail to show they conferred a benefit on GEICO, their unjust enrichment claim is unfounded and should be dismissed.  *See Mitchell*, 729 A.2d at 1203; *Butler*, 768 S.E.2d at 336.

## VI.   CONCLUSION

Plaintiffs once again have failed to satisfy their pleading obligations under *Twombly/ Iqbal* and Fed. R. Civ. P. 9(b) and cannot show they are entitled to any form of relief.[8]  Plaintiffs' SAC requires dismissal, and after their third try, this Court should dismiss with prejudice.

---

[8] The Court also lacks subject matter jurisdiction because Plaintiffs' claims arise from the rights of, and duties owed to, someone other than Plaintiffs.  *See U.S. SEC v. Quest Energy Mgmt.*

DATED this 15th day of February, 2016.


LEWIS ROCA ROTHGERBER CHRISTIE LLP


*/s/ Jamie L. Halavais*

Dan W. Goldfine (*admitted pro hac vice)*
Joshua Grabel (*admitted pro hac vice*)
Jamie L. Halavais (*admitted pro hac vice*)
Ian M. Fischer (*admitted pro hac vice*)
201 E. Washington Street, Suite 1200
Phoenix, Arizona  85004
Telephone: 602-262-5311
Facsimile:  602-262-5747
Email:  dgoldfine@lrrc.com
   jgrabel@lrrc.com
   jhalavais@lrrc.com
   ifischer@lrrc.com

Attorneys for Government Employees Insurance
Company, GEICO General Insurance Company,
GEICO Indemnity Company, GEICO Casualty
Company, GEICO Advantage Insurance Company,
GEICO Choice Insurance Company, GEICO Secure
Insurance Company, and GEICO County Mutual
Insurance Company

---

*Grp.*, 768 F.3d 1106, 1109 (11th Cir. 2014) ("To establish standing, a litigant ordinarily 'must assert his own legal rights and interests' and cannot assert the rights or interests of someone else.") (*quoting Warth v. Seldin*, 422 U.S. 490, 499 (1975)).  GEICO incorporates its argument in GEICO's Motion to Dismiss the FAC on this issue.  Doc. 159, at 4-5, § I.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of February, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a Notice of Electronic Filing to all counsel of record that are registered with the Court's CM/ECF system.

*/s/ Jamie L. Halavais*