UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CRAWFORD'S AUTO CENTER, INC.
and K & M COLLISION, LLC,

    Plaintiffs,

v.                                      Case No: 6:14-cv-6016-Orl-31TBS

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, et al.,

    Defendants.

## ORDER

Plaintiffs' Second Amended Class Action Complaint ("SAC") contains seven counts alleging violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) and (d); one count of fraud; and one count of unjust enrichment (Doc. 205). At their core, Plaintiffs' claims are that Defendants have engaged in "long-running unlawful conduct to suppress compensation to repair facilities for automotive collision repairs covered by insurance." (Id., ¶ 1).

Defendants moved to dismiss the SAC (Docs. 209-11) and Plaintiffs filed a response which includes twelve exhibits totaling 1,490 pages (Doc. 216). Defendants motioned the Court to strike several of those exhibits (Doc. 225). On a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) the court ordinarily may not look beyond the pleadings. U.S. v. Humana, Inc., 776 F.3d 805, 811 (11th Cir. 2015); Benson v. QBE Ins. Corp., 61 F. Supp. 3d 1277, 1279 (S.D. Fla. Nov. 21, 2014) ("On a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court considers only the four corners of the complaint, along with any documents attached to the complaint or incorporated into the

complaint by reference."); Bateman Harden P.A. v. Francis, No. 4:10cv136-MCR/CAS, 2012 WL 3689402, at *2 (N.D. Fla. Aug. 27, 2012).

If the court does consider other evidence, it must generally convert the motion to dismiss into a FED. R. CIV. P. 56 motion for summary judgment. Day v. Taylor, 400 F.3d 1272, 1275-76 (11th Cir. 2005). But this is not always the case. The court may consider a document attached to a motion to dismiss without converting the motion into a motion for summary judgment if the document "is: (1) central to the plaintiff's claim; and (2) undisputed." Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002); SFM Holdings, Ltd. v. Banc of Am. Sec., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010) ("In ruling on a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged."). "This rule 'logically extends to documents attached to a plaintiff's response.'" Ritz v. Lake Cty., Ill., No. 08 C 5026, 2010 WL 2025392, at *2 (N.D. Ill. May 20101). The court may also consider judicially noticed documents. U.S. ex rel. Osheroff v. Humana, Inc., 776 F.3d 805, 811 (11th Cir. 2015).

The motion to strike was granted in part and denied in part (Doc. 234). Specifically, the Court sustained defense objections to Exhibits D and E1 to E7 and excluded them from consideration when ruling on the motions to dismiss. Exhibit D consists of copies of license agreements between Plaintiff Crawford's Auto Center, Inc., and non-parties CCC Information Services, Inc., Mitchell International, Inc., and AudaExplore North America, Inc. (the "Information Providers"). The Information Providers license estimating software to Plaintiffs and Defendants to calculate the total cost of a repair, taking into account labor and repair procedures (Doc. 205, ¶¶ 67-68). Plaintiffs allege that estimates created using the Information Providers' software are intended "to constrain repair estimates and suppress compensation to repair facilities." (Id., ¶¶ 71, 113). The SAC identifies the

Information Providers as conspirators and members of the racketeering enterprises established by Defendants (Id., ¶ 24). The Court sustained the objection to Exhibit D because "[t]he license agreements … are not between Defendants and the Information Providers and, while they may ultimately prove to be important evidence, they are not so central to the claims in the SAC that they should be considered when ruling on the motions to dismiss." (Doc. 234 at 5).

Exhibits E1-E7 are copies of repair estimates generated by Defendants and repair orders created by Plaintiffs (Docs. 216-5–216-11). Plaintiffs characterize the estimates as "illustrative samples" of Defendants' fraud and identify them as "part of the foundational documents underlying" Exhibits K and M to the SAC (Doc. 229 at 11-13). Plaintiffs attached Exhibits E1 to E7 to their response "[t]o further illustrate and clarify the fraud for the Court." (Id.). The Court recognized that Exhibits E-1 to E-7 are "foundation documents for exhibits that are already part of the SAC" and sustained Defendants' objection because they "are not so central to the issues raised in the motions to dismiss that they should be considered at this stage in the proceeding." (Id.).

The case is now before the Court on Plaintiff's Motion and Memorandum in Support of Their Objection to, or, Alternatively, Reconsideration of, Magistrate Judge Smith's Order Dated June 6, 2016 Sustaining, in Part, Defendants' Onjections [sic] to Plaintiffs' Exhibits to Their Consolidated Opposition to Defendants' Motion to Dismiss, and Excluding Consideration of Plaintiffs' Exhibit D and Exhibits E1-E7 (Doc. 237). Defendants oppose the motion (Doc. 240), and Plaintiffs have filed a reply (Doc. 242). In a footnote to the motion, Plaintiffs argue that the Court should reconsider its decision on the motion to strike (Doc. 237 at 4 n.4). This Order decides the motion for reconsideration; the district judge must rule on the objections.

As the Court has recently noted, "[t]he federal rules do not specifically provide for the filing of a 'motion for reconsideration.'" Case No. 6:14-cv-6000-Orl-31TBS (M.D. Fla. May 12, 2016) (Doc. 129 at 1) (citing Van Skiver v. United States, 952 F.2d 1241, 1243 (10th Cir. 1991), cert. denied, 506 U.S. 828, 113 S.Ct. 89, 121 L.Ed.2d 51 (1992)). Still, it is generally understood that FED. R. CIV. P. 59(e) encompasses motions for reconsideration. 11 Charles Alan Wright et al., Federal Practice & Procedure § 2810 (3d ed. 2012). "In the interests of finality and conservation of scarce judicial resources, reconsideration is an extraordinary remedy, to be employed sparingly." Case No. 6:14-cv-6000-Orl-31TBS (M.D. Fla. May 12, 2016) (Doc. 129 at 2) (citing United States v. Bailey, 288 F. Supp. 2d 1261, 1267 (M.D. Fla. 2003)).

"Appropriate circumstances for reconsideration include situations in which the Court has obviously misapprehended a party's position, the facts, or mistakenly has decided an issue not presented for determination." Id. (citing Anderson v. United Auto Workers, 738 F.Supp. 441 (D. Kan. 1990)). Reconsideration is warranted based upon: "(1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice." McGuire v. Ryland Grp., Inc., 497 F. Supp. 2d 1356, 1358 (M.D. Fla. 2007). See also 11 Charles Alan Wright et al., Federal Practice & Procedure § 2810.1 (3d ed. 2012).

The moving party must meet a very high standard, presenting "facts or law of a strongly convincing nature to induce the court to reverse its prior decision." McGuire, 497 F. Supp. 2d at 1358 (internal quotations omitted). "This ordinarily requires a showing of clear and obvious error where the interests of justice demand correction." Id. (internal quotations omitted). "A party who fails to present its strongest case in the first instance generally has no right to raise new theories or arguments in a motion for reconsideration."

Id. (internal quotations omitted). "To avoid repetitive arguments on issues already considered fully by the court, rules governing reargument are narrowly construed and strictly applied." Case No. 6:14-cv-6000-Orl-31TBS (M.D. Fla. May 12, 2016) (Doc. 129 at 3) (citing St. Paul Fire & Marine Ins. Co. v. Heath Fielding Ins. Broking Ltd., 976 F.Supp. 198, 201-02 (S.D.N.Y. 1996)).

Plaintiffs reference their license agreements with the Information Providers in the SAC (Doc. 205, ¶¶ 4, 67, 68, 71, 74, 78, 113). In their motion for reconsideration they maintain that those license agreements are central to their claims because they purchase estimating programs directly from the Information Providers and rely on those systems "as industry neutral guideposts." (Doc. 237 at 9). Plaintiffs allege that the Information Providers have partnered with Defendants "to establish falsified industry repair data, promulgate programs which limit the time, scope and extent of repair procedures, and scrub Defendants' estimates to fraudulently represent what are necessary and compensable repair procedures to restore vehicles to pre-loss condition, and misrepresent the so-called prevailing 'rates' for labor and materials." (Id.). Plaintiffs argue that these allegations are central to their claims (Id.). Therefore they argue, the Court's decision to strike the license agreements misapprehended "that the Information Providers' estimating systems and promulgation of industry standards and data are the tool through which the fraud is committed," and license agreements are "a critical component of Plaintiffs' claims" [ ] that they purchase – as they must in order to perform collision repairs – the Information Providers' estimating systems programs and are harmed as a result." (Id. at 9-10). These allegations are already in the SAC. For example, paragraph four states:

> In addition, the three auto data companies also sell the only "estimating programs" upon which all vehicle repairs are based. The estimating programs are sold both to Defendant

> Insurers for the purposes of adjusting claims to pay for repairs, and to collision repair facilities to appraise the damaged condition of the vehicles and to blueprint the repairs. These programs are supposed to be neutral – as are the data companies, and the programs are accompanied by guides that speak to all of the open contingencies that may arise in a collision repair, which will require enhanced blueprinting of repairs. Notwithstanding the clear intent of these programs, they are utilized by Defendant Insurers as an artificial limit on repair compensation, and the data companies facilitate this artifice as well. When collision repair facilities like Plaintiffs and the proposed classes present a repair order to perform the required repairs adhering to manufacturer guidelines and specifications, which also outlines the compensation for their work, they are fraudulently told – uniformly and consistently – that the  additional operations or expanded procedures, as well as the labor times listed to perform these repairs, do not meet the so-called prevailing rate. And, the data companies who sell this program which is supposed to guide collision repair facilities in preparing a proper estimate, actually "scrub" the estimates presented by Plaintiffs and the proposed classes for the Defendant Insurers in order to reduce their repair compensation.

(Doc. 205, ¶ 4).

Exhibit D may be illustrative of the agreements between Plaintiffs and the Information Providers but it is not needed for the Court to make an informed decision on the motions to dismiss. The SAC alleges what Plaintiffs want the Court to know about the Information Providers and their role in this controversy. Exhibit D adds no new material information, and needlessly adds to the record the Court will consider when ruling on the motions to dismiss.

Exhibits K and M to the SAC are charts containing: (1) repair order numbers; (2) insurance company claim numbers; (3) claim dates; (4) payment bases; (5) the name of the insurer on the estimate; (6) the adjuster/appraiser for the claim; (7) payment amount; (8) name of the insurer making the payment; (8) total received by Plaintiff; (9) the amount of the shortfall in payment to Plaintiff; (10) applicable labor rates; (11) labor operation; (12)

the amount of the paint and material reimbursement; (13) refinish operations; (14) parts; and (15) the time discrepancy for over ninety instances where Plaintiffs performed repairs on vehicles insured or covered under Defendants' policies (Doc. 205, Exhibits K and M; Doc. 229 at 11). The Court rejected Plaintiffs' attempt to have the Court consider the repair estimates and repair orders upon which Exhibits K and M to the SAC are based when ruling on Defendants' motions to dismiss.

Plaintiffs argue that this was error because "Exhibits E1-E7 demonstrate Defendants' fraud in misrepresenting that repair procedures and the time to perform them are not prevailing or competitive in the market, and/or are not required to perform repairs of like kind and quality, in order to return the damaged vehicles to pre-loss condition." (Doc. 237 at 6). Plaintiffs also argue that the repair estimates and repair orders are central to their claims and the arguments on the motions to dismiss (Id.). The Court has considered these arguments and finds that it did not misapprehend the facts or the law when it sustained Defendants' objections to Exhibits E1-E7. The SAC includes Exhibits K and M which were derived from the repair estimates and repair orders, and already contains the relevant information.

Plaintiffs' purpose in submitting the repair estimates and orders is "[t]o further illustrate and clarify the fraud for the Court." (Doc. 229 at 12). The Court properly exercised its discretion in determining not to consider these foundation documents in connection with the motions to dismiss. The information is already summarized in the SAC , and the inclusion of Exhibits E1-E7 would needlessly increase the record the Court will consider on the motions to dismiss.

For these reasons, Plaintiffs' motion (Doc. 237) is **DENIED** to the extent it seeks reconsideration of the Order at docket entry 234.

**DONE** and **ORDERED** in Orlando, Florida on August 10, 2016.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record